SAMUEL C. RAUB, Executor,

*vs.*

THE MASONIC MUTUAL RELIEF ASSOCIATION and
MARY E. HOPKINS.

EQUITY No. 8004.

{ Decided February 4, 1884.
{ The CHIEF JUSTICE and Justices Cox and JAMES sitting.

1. In an ordinary case of a decree against two joint defendants, one of them cannot separately appeal; but where the real contesting parties are the, plaintiff and one of the defendants only, the other having no interest in the suit, a decree in favor of the plaintiff is virtually a decree against such defendant only, and he may appeal therefrom notwithstanding no appeal is taken by the other defendant.

2. Where an association is chartered by an act of Congress, any by-law of such association, contrary to the provisions of the charter, is in effect a by-law in violation of a statute of the United States, and will, if for no other reason, be void.

3. By its charter the object of an association in the nature of an insurance company was declared to be "to provide and maintain a fund for the benefit of the widow, orphans, heir, assignee or *legatee* of a deceased member." One of the by-laws provided that "no change of beneficiary can be made' or recognized until submitted to and approved by the board of directors." A member being in good standing in the association, had named his sister as his beneficiary, with the consent and approval of the board of directors. Afterwards, he made a will, directing the fund derived from his interest as a member of the association, to be paid at his death to his illegitimate son.' The association had no knowledge of this change, and on the death of the member, the sister claimed the fund.

*Held*, That the son was entitled to the fund, for the reason that the charter recognized the right of the member to designate the beneficiary by his will; and so far as any by-law attempted to cut off or diminish this right, it was inoperative.

STATEMENT OF THE CASE.

Dr. George N. Hopkins, a member of a Masonic lodge in Washington city, in good standing, in April, 1876, made application to the Masonic Mutual Relief Association for membership. In his application was the following:

"*Fifth.* I direct that, in case of my decease while a member of the above-named association, the moneys to which I may be entitled as such member, shall be paid to my sister,

Mary E. Hopkins, who now resides at Washington, D. C., *unless I should hereafter otherwise direct.*"

On the approval of this application, a certificate was issued by the association, dated May 1, 1876, as follows:

"This is to certify that George N. Hopkins, a Master Mason, and member of Hiram Lodge No. 10, of Washington, D. C., has paid the sum of four dollars, and is hereby constituted a member of the Masonic Mutual Relief Association of the District of Columbia, and is entitled to all the benefits of said association, upon his paying into the treasury thereof the sum of one dollar and ten cents within the time prescribed by the by-laws of the association, after receiving notice of the death of a member of the same."

June 5, 1878, Hopkins had an illegitimate son born to him, whom he named George H. Hopkins.

November 3, 1879, he executed his last will, designating this son as the beneficiary of his interest as a member of the association, and naming the executor of his will as trustee of the fund. Of this designation the association had no notice.

The second section of the charter of the association defines its objects to be "to provide and maintain a fund for the benefit of the widow, orphans, heir, assignee or legatee of a deceased member, immediately upon proof of such death."

The fourth section of the charter authorized the directors to make by-laws, &c., "not contrary to this charter, or to the laws of the United States."

Section 4 of Article VI of the by-laws of the association, in reference to a change of beneficiary, provides, "that no change of beneficiary can be made or recognized until submitted to and approved by the board of directors."

Dr. Hopkins died November 18, 1881. His will was proven, and letters testamentary issued to complainant, who thereupon demanded the fund. Payment being refused, he brought this suit.

The only question raised by the answer of the association was, that there had been no change of beneficiary recognized by it.

Mary E. Hopkins answered, claiming that the money belonged to her in her own right, and prayed that she might be "hence dismissed," &c. The cause was heard on bill and answers, and a decree entered directing the association to pay the fund to the complainant.

From this decree the defendant, Mary E. Hopkins, appealed. No appeal was taken by the association, and as no supersedeas bond was filed, the money was paid over to complainant.

EDWARDS & BARNARD for complainant:

1. The appeal of Miss Hopkins brings to this court no question for its determination, this not being a bill of interpleader, and she having filed no cross-bill, and asked for no affirmative relief in her answer, she only asks to be "hence dismissed," &c.; and the decree, directing payment to complainant by the association, *at complainant's cost*, is, in effect, a dismissal as to her. It relieves her from the costs of the suit, and she cannot be aggrieved thereby, having asked for no decree in her favor, and the court making none against her. R. S. D. C., Sec. 772; 2 Daniels Chan. Prac., 1541 and note, 1648–50; Wash. R. R. *vs.* Bradleys, 10 Wall., 302.

The association is a mutual benevolent society of Masons, organized under act of Congress, approved March 3, 1869 (15 Stats. at Large,, 334), which act was amended March 3, 1875 (18 Stats. at Large, 508).

The second section of its charter provides, "that the particular business and objects of such society or corporation shall be to provide and maintain a fund for the benefit of the *widow, orphans, heir, assignee or legatee* of a deceased member, immediately upon proof of such death."

The fourth section authorizes the directors to make by-laws, &c., "not contrary to this charter, or to the laws of the United States."

The fifth section provides that its funds, property and effects shall never be divided among the members of said society, but shall descend to their successors, "for the promo-

tion of the principles of the said corporation and the benev-
olent purposes of the society which they represent. But
this provision shall not prevent the said board of directors
from carrying out the principles of the society or corpora-
tion, viz., to the *widow, orphans, heir, assignee or legatee* of a
deceased member, as many dollars as there are members in
good standing on the books of the corporation."

The by-laws make no provision as to how the person shall
be named who is to receive the benefit of this contribution
of one dollar from each survivor, on the death of a member;
but the contract for its payment is one between the member
and association only, and may be forfeited by default of the
member in various ways, and can only be kept in force by
payments made by the member, and his continued good
standing as a Mason. The practice has been to allow the
member to name the beneficiary, either in his application or
afterward, and to change the same at his pleasure, if approved
by the directors. One by-law provides:

" That no change of beneficiary can be made or recognized
until submitted to and approved by the board of directors."

Should this by-law be construed as applying to an appoint-
ment of a payee by will? And if so, would it, in that event,
be authorized by the charter of said society?

If no appointment had been previously made, there could
be no doubt of the member's right to make one by his will,
without submitting it to the board. And in this case, where
a payee is named *conditionally*, and such conditional nomina-
tion is accepted and acquiesced in by the association, has the
member not reserved to himself the same right of appoint-
ment by will?

The by-law was evidently made for the benefit of the
association, and not to give any additional title to a payee
named; and if it is constitutional, it is a rule that the associa-
tion might waive, if so disposed; and its waiver, or repeal,
could not be prohibited by any beneficiary before designated.

The right of a man who contracts with a corporation for
the payment of money to another person after his death, to
change the beneficiary, has been the subject of much contro-

versy. If the contract is one between him and the insurer only, and he pays the consideration therefor, it seems to us that in natural justice and right he should be allowed to change the object of his bounty at any time during his life, while he retains testamentary capacity, as freely as he might change the legatees in a will; and certainly with the prior consent of the company, or its subsequent acquiescence. In either case the gift is not effectual, no benefit accrues to the donee until after the death of the donor.

The right of a beneficiary in a policy of insurance, or of a legatee named in a will, is only an *expectancy*, during the life of the insured or testator, subject to be determined any day by forfeiture of policy, or change of will, or, in this association, by change of beneficiary by the member and board of directors.

1. This association differs very widely from an ordinary life insurance company. It has no capital, but only undertakes to collect and pay over assessments as mutually agreed upon between its members. Worley *vs.* N. W., Mas. Aid A., 3 McCrary C. C., 53; Bunyon on Life Asso., 176, 185, 369; Ballou *vs.* Gile, 50 Wis., 614; Mills *vs.* Rebstock, 29 Minn., 380; Neskern *vs.* N. W. End. Asso., 30 Minn., 406; Com. League Asso. *vs.* People, 90 Ill., 166; Masonic Relief Asso. *vs.* McCauley, 2 Mackey, 70.

2. The by-law aforesaid should not be construed to apply to a beneficiary named by will, as the charter contemplates payment to a *legatee,* and it is always lawful to change a legatee. Sup. Council *vs.* Priest, 46 Mich., 429; Kerman *vs.* Howard, 23 Wis., 108, 112; Md. Mut. Soc. *vs.* Clendennin, 44 Md., 429; Arthur *vs.* Odd Fellows' Asso., 29 O. St., 557.

The contract of insurance is to be construed most strongly against the company; and there is no reason why this by-law should apply, as a legatee could have no interest, and could not be positively known or fixed with certainty, until after the death of the insured. Nat. Bank *vs.* Ins. Co., 95 U. S., 673; 16 Fed. Rep., 720.

In this respect the contract might well be construed like a fire insurance policy, which provides that it shall be void

if assigned without the consent of the company. If the assignment in such case is made, after liability is fixed by loss, it is valid. Spare *vs.* Home Mut. Ins. Co., 15 Chic. Leg. News, 415; Carroll *vs.* Charter Oak Ins. Co., 38 Barb., 402; 40 Ib., 292.

The will does not speak until the death of the maker, when the loss has occurred and the liability is fixed.

Besides, this by-law, made only for the association, may well be waived by it; and in this case it has been waived by the payment to complainant of the money, without appealing; and it is not competent for the *appellant* to say that the association may not waive the same. Ins. Co. *vs.* Norton, 96 U. S., 234; Mut. Prot. Ins. Co. *vs.* Hamilton, 5 Sneed, 269; N. Y. L. Ins. Co. *vs.* Flack, 3 Md., 341.

3. The appellant had no vested interest in this fund by virtue of her conditional nomination as payee. Clark *vs.* Durand, 12 Wis., 224; Landrum *vs.* Knowles, 22 N. J. Eq., 594; Rison *vs.* Wilkinson, 3 Sneed, 565; Gambs *vs.* Cov. Mut. Life Ins. Co., 50 Mo., 44; Richmond *vs.* Johnson, 28 Minn., 447, 11 Ins. L. J., 215; Foster *vs.* Gile, 50 Wis., 603; Swift *vs.* Ry. & P. F. C. M. A. & B. A., 96 Ill., 309; Un. Mut. Ins. Co. *vs.* Stephens, 16 Chic. Leg. News, 127; Supreme Council *vs.* Priest, 46 Mich., 429.

JAMES G. PAYNE and HINE & THOMAS for Mary E. Hopkins:

1. The Masonic Mutual Relief Association is an insurance company, and is engaged in the insurance business.

"There are certain organizations," says Mr. May in his book on insurance (2d ed., § 550 *a*), "prevalent in this country and elsewhere, under the name of relief, benefit or benevolent societies, or some similar name which generally have for their objects aid to their members, or to their widows and children after the decease of their respective members, and in some cases having both objects. These associations, though not speculative and not based upon capital paid in as investment, have nevertheless a general purpose of mutual protection, resorting to assessments for

10

the procurement of funds to discharge the mutual obligations of members, and are governed by by-laws which limit and define their obligations. Their certificates of membership often resemble, both in form and substance, ordinary policies of life insurance; and the courts have, with great uniformity, treated them as substantially life insurance companies, applying to them, and to the mutual relations of the members, the rules and principles applicable to the contract of life insurance." Commonwealth *vs.* Wetherbee, 106 Mass., 149; State, ex rel., *vs.* Citizens, &c., Associations, 6 Mo. App., 163.

2. Neither the insured, during his life, or his next of kin, after his death, can have any claim to the insurance money, where in the policy it is expressed to be for some one else.

"If the policy, when issued, expressly designates a person as entitled to receive the insurance money, such designation is conclusive, unless some question arises as to the rights of the creditors of the person who paid the premiums and procured the insurance." Bliss on Life Ins. (2d ed.), 316.

"We apprehend the general rule to be, that the policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as beneficiary or beneficiaries; and that there is no power in the person procuring the insurance, by any act of his, by deed or by wills, to transfer to any other person the interest of the person named. An irrevocable trust is created. The person designated in the policy is the proper person to receipt for, and to sue for the money. The legal representatives of the insured have no claim upon the money and cannot maintain an action therefor, if it is expressed to be for some one else. Id., § 318.

Where the policy designates a person to whom the insurance money is to be paid, the person who procures the insurance, and who continues to pay the premiums, has no authority by will or deed to change the designation or title to the moneys. He is under no obligation to pay the premiums unless he has covenanted so to do, but if he does

so, the person originally designated in the policies will derive the benefit. The change of designation can be made only by the person originally, and therefore all such persons must concur in the change." Id., § 337; May on Ins. (2d ed.), § 392; Ky. Mas. Mut. Life Ins. Co. vs. Miller's Adm'r, 13 Bush., 489; Gashings vs. Caldwell, 7 Rep. (Tenn.), 410; Robinson vs. Duvall, 12 Rep. (Ky.), 466; Ricker vs. Charter Oak L. Ins. Co., 27 Minn., 193.

But it is needless to multiply references to cases on this point.

3. While it is true the contract in this case differs from the ordinary contract of life insurance, in this, that it gives the assured the power of changing the beneficiary, he has, nevertheless, no *interest* in the "benefits." He has only a *power* to appoint a person who is to receive them, and he must exercise that power in the manner prescribed by the by-laws of the corporation.

His failure to exercise that power in accordance with the by-laws of the corporation, leaves the contract on the same footing as a contract of life insurance in the usual or common form. Maryland Mut. Society, &c., vs. Clendennin, 44 Md., 429; Arthur et al. vs. Odd Fellows' Benf. Asso., 29 O. St., 557 (1876); Duvall vs. Goodson, 9 Ins. L. J., 901 (Ky.) [1880]; Ky. Mas. Mut. L. Ins. Co. vs. Miller's Adm'rs, 13 Bush., 494 (1877); Folmer's Appeal, 87 Pa. St., 133 (1878).

4. When George H. Hopkins became insured in the Masonic Mutual Relief Association, he became a member of the association, and was bound by its constitution and by-laws, though they were not recited in the policy. One of those by-laws was that there should be "no change of beneficiary" without the approval of the directors of the association. (Art. VI, sec. 4.) "It is not within the power of the company," says the court in Duvall vs. Goodson, *supra*, "or the members, or both, to alter the rights of those who by the charter are declared to be the beneficiaries, except in the mode and to the extent therein indicated." In that case Crofoot, at the time of his death held a certificate of membership in the Kentucky Masonic Insurance Company

an association for mutual relief, substantially like our Masonic Mutual Relief Association. The stipulation in the certificate in the Kentucky case was to pay to said Crofoot's daughters, Anna and Lou May Crofoot, or his assigns, *or as he may direct by will.*

5. Again, Miss Hopkins, in her answer says, "her brother's love and affection for her was very great; that he sympathized deeply with her, because he thought her father, while living, had not been as liberal with her as he had with the rest of the children (especially with himself), and therefore he proposed to effect said insurance for her benefit, with a view, as he expressed it, of putting her, in the event of his death, on an equal footing as near as he could, with her brothers and sisters. After the deceased had thus spoken, he applied for membership in said association, and was accepted, of which he at once informed her and delivered said certificate to her, which she accepted." This is not denied. It may well be questioned, then, whether the assured, Miss Hopkins, had not acquired such a vested right on said insurance as to put it beyond the power of the insured to deprive her of it. It does seem to us that even on this the appellant is entitled to the proceeds of the certificate in controversy.

Mr. Justice JAMES delivered the opinion of the court.

The testator, George N. Hopkins, was a member of the Masonic Mutual Relief Association. In his application for membership, he designated his sister, Mary E. Hopkins, as the beneficiary, in the following words:

" I direct that in case of my decease while a member of the above-named association, all moneys to which I may be entitled as such member shall be paid to my sister, Mary E. Hopkins, unless I should hereafter otherwise direct."

Subsequently he made a will, naming his illegitimate child as the beneficiary. It appears that one of the by-laws of the association provided that "no change of beneficiary can be made or recognized until submitted to and approved by the board of directors."

The naming of this illegitimate child as his beneficiary was made without such previous consent, and it has been insisted on the part of Mary E. Hopkins that this attempt to change the beneficiary was invalid because forbidden by the by-laws, unless done with the consent of the company, which consent it was admitted was not obtained; that consequently Mary E. Hopkins remains the only person designated to take this money.

The executor, who appears to have sued in his title of executor, but who really was the trustee, sets up these facts. Mary E. Hopkins, who seems to have intended to claim the fund, merely filed an answer asserting that for want of any subsequent valid designation, she was the beneficiary and entitled to the money, but she rather singularly winds up her answer by praying hence to be dismissed.

The company reply that they have no interest in the money, and are ready to pay it to whomsoever the court shall direct it to be paid. The decree below was that the company should pay the fund to the plaintiff, saying nothing about Mary E. Hopkins, but, in effect, that was a decree against her, and she brings the case here on appeal. The association took no appeal, so that the case is here simply on the appeal of Miss Hopkins.

One of the questions raised was whether she could bring the case before us. In an ordinary case of a decree against two joint defendants, one of them cannot separately appeal, as the Supreme Court has heretofore decided in a number of cases. But this is not a case of that character. The decree was virtually a decree in favor of this executor, and against this appellant. They were the contesting parties, and when the decree said that the association should pay the plaintiff, it was really a decree against her. So that we think the case is properly here for review.

The validity of this new designation is, therefore, presented as a question for the determination of the court. A very full discussion of the law of the case was made by counsel, but we think we can dispose of the matter very briefly upon one principle. The power of the association

to make by-laws was limited by the charter itself to such by-laws as should not be in violation of the laws and Constitution of the United States. And this would have been the case even had it not been provided for in the charter. Now, one of the laws of the United States is this very charter, the second section of which provides that "the particular business and objects of such society or corporation shall be to provide and maintain a fund for the benefit of the widow, orphans, heirs, assigns or *legatees* of a deceased member, immediately upon proof of such decease." That provision recognizes fully and completely the right of a member of the association to designate the beneficary by his will. And that power cannot be cut off or diminished by a by-law. So far, then, as this by-law attempts to do so, it is itself inoperative.

It may be observed that the power of the association to make by-laws seems to be somewhat restricted, and at any rate hardly to reach this subject, for while the fourth section of the charter declares that "the directors shall have full power to make and prescribe such by-laws, rules and regulations as they shall deem needful and proper for the disposition and management of the funds, property and effects of the society," it does not go so far as to say that they may regulate the manner in which beneficiaries are to be designated. In making this by-law, then, the association seems to have gone beyond its power, and if its effect is to prevent a party from freely designating by his will the legatee of his benefits as a member of the association, it is in conflict with the second section of the charter, which is, as we have said, a statute of the United States. We must, therefore, give effect to the recognition contained in that statute of the power to make a bequest, and we cannot cut it down by any construction that we might give to this by-law.

The opinion of the court, therefore, is that this bequest was a valid one, and the decree below is affirmed.